IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JACK OPACH,** | : | |
| Plaintiff, | : | CIV. ACTION NO. 2:22-cv-786 |
| v. | : | |
| | : | **COMPLAINT** |
| **GREAT ARROW BUILDERS, LLC,** | : | |
| Defendant. | : | **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, Jack Opach, by and through undersigned counsel, The Lacy Employment Law Firm LLC, hereby files this Complaint against Defendant and states as follows:

### PROCEDURAL AND ADMINISTRATIVE REMEDIES

1. All the allegations contained in the foregoing paragraphs of this Complaint are incorporated by reference as if set forth herein at length.

2. Venue is proper in the District Court under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this District.

3. On or about November 22nd, 2021, Plaintiff dual-filed a charge with the Pittsburgh office of the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission alleging retaliation and discrimination based on sex, national origin, and age.[1] *See* EEOC Charges of Discrimination, attached as Exhibit 1.

---
[1] Plaintiff's claims under the PHRA and PFPO are referenced for notice purposes. Plaintiff is required to wait one full year from the time of filing the dual-filed charge to bring claims under

4. The EEOC issued a Right to Sue letter ("Right to Sue") and Plaintiff timely filed the above-captioned action on or before 90 days from receipt of the Right to Sue that the EEOC issued. *See Id.*

5. Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## PARTIES

6. Mr. Opach is a 52-year old man of Polish origin who worked at Great Arrow Builders as an electrician.

7. Great Arrow Builders, a partnership of Bechtel, McCarl's, Babcock & Wilcox, is a construction services company located at 1018 Pennsylvania Avenue, Monaca, PA 15061.

## JURISDICTION AND VENUE

8. Venue is proper in the District Court under 28 U.S.C. §1391(b) and 42 U.S.C. §2000(e)-5(f).

9. This District Court has jurisdiction over Count I (ADEA) pursuant to 29 U.S.C. § 621, et seq.

10. This District Court has jurisdiction over Count II (ADA) pursuant to 42 U.S.C. § 12101, et seq.

11. This District Court has jurisdiction over Count III (PHRA) pursuant to 43 P.S. § 951, et seq.

---

the PHRA and PFPO. Plaintiff must however file his lawsuit in advance of the same because of the date of issuance of his federal right-to-sue letter. Plaintiff may also seek to add Shell Oil Company, which is a company that is headquartered in Royal Dutch Shell, 1000 S. Main St, Houston, TX 77002 under a theory of independent contractor liablity.

12. Venue is proper in the District Court under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this district.

## FACTUAL BACKGROUND

13. Mr. Opach worked at Great Arrow Builders, LLC as an electrician for approximately five months. He was hired in Spring of 2021, and was terminated on September 15th, 2021. His job responsibilities included installations, terminations, grounding, glanding, and QAQC inspections.

14. Shortly after Mr. Opach was hired, he began experiencing discrimination based on his age and national origin. On several occasions, management at Great Arrow Builders made derogatory comments about him such as "fucking imports, blame the Polish…."

15. Mr. Opach also witnessed employees make racist comments. Mr. Opach's foreman, Randy Gardner would make comments such as "fucking blacks."  He would also make comments regarding Blacks propensity for violence.  The comments made created a hostile work environment for those that had to suffer in it.  He also made the comment that they should put the Blacks together becuase slaves are supposed to work together.

16. Mr. Opach complained to a Foreman, Randy Gardner, about the discriminatory language and actions of management. He also made several complaints to the Union Steward, Terry Hunt and Mr. Gardner's supervisor.

17. Management tried to pressure Mr. Opach into corroborating false accusations against two Black Americans.  Mr. Opach refused.  This was the precedent for the discrimination from which Mr. Opach suffered while at Great Arrow Builders.  After refusing to corroborate these false accusations, which were levied to discriminatorily terminate two Black Americans, Mr. Opach found himself in Great Arrow Builders' cross-hairs.

18. Following Mr. Opach refusing to corroborate allegations against these two Black Americans and his decision to associate with them, Mr. Opach was denied overtime on certain occasions.

19. Mr. Opach and other employees frequently were subjected to demeaning comments by management, which often included profanities directed against foreigners, immigrants, and people of color.

20. Mr. Opach submitted a written complaint to Eric White about Great Arrow Builder's discriminatory actions.

21. Despite this discriminatory culture, Mr. Opach's supervisor, Frank Sturbleng, recommended Mr. Opach to be promoted to a Field Engineering position due to his excellent work ethic and experience in the field.

22. This position was given to a less qualified, younger, American electrician instead, despite Mr. Opach's superior qualifications.

23. Frank Sturbleng explained to Mr. Opach that he did not receive the position because he "did poke the bear", and that he was "first on the list to lay off."

24. Mr. Stuberleng was reprimanded for allowing Mr. Opach to go straight to labor relations.

25. Great Arrow Builders retaliated against Mr. Opach due to his efforts to create a less hostile work environment for himself and others.

26. Mr. Opach suffered from an elbow injury from lifting heavy bags full of tools. He pulled his tendon. Mr. Opach informed Mr. Gardner, Mr. Opach's supervisor, of the elbow injury.

27. Mr. Opach had a pre-existing foot injury which was well documented with Great Arrow Builders, which caused his foot to be in pain and swell, especially when he wore safety boots.  These conditions were not injuries that Mr. Opach suffered before his time at Great Arrow Builders.

28. Great Arrow Builders refused to accommodate Mr. Opach despite the fact that the safety boots exacerbated his foot injury.

29. Mr. Opach met with Dr. Mansour to discuss his foot injury and how he needed an exemption from wearing the safety boots, and Dr. Mansour said that she knew who Mr. Opach was, where he was from, and that she would not issue a "variance" regarding the safety boots.

30. Great Arrow Builders allowed other workers to obtain a variance for the same type of boots for which Mr. Opach sought a variance.

31. Mr. Opach intended to use his cell phone to facilitate communication with Dr. Mansour, but accidentally opened a recording application.

32. Dr. Mansour refused to examine Mr. Opach's foot, called security and concluded the appointment.

33. On, or around September 13, 2021, Senior General Foreman, Ed.S., wrote up Mr. Opach for the safety boot issue. This write up was a direct response to Mr. Opach's written complaint about Great Arrow Builder's previous discriminatory actions.

34. On September 15, 2021, Eric White informed Mr. Opach that his job was being terminated, and presented a termination notice consisting of incorrect statements which included misinformation about the foot injury requiring him to wear a safety boot.

35. Mr. Opach's termination was pretextual.  The real reasons were that Mr. Opach complained about race discrimination and associated himself with members of a different race,

Mr. Opach's age, his immigrant status, and his disabilties. With all of these boxes checked against him, Great Arrow Builders decided to discriminatorily end Mr. Opach's employment with them.

## COUNT I
### Age Discrimination in Employment Act, 29. U.S.C. § 621, et seq.
*Discrimination and Retaliation*

36. Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

37. Based on the foregoing, Defendant engaged in unlawful employment practices in violation of the ADEA.

38. Plaintiff is and was at the time of his termination, over forty years of age, and an individual within the class protected by the ADEA.

39. In discriminating against and harassing Plaintiff because of Plaintiff's age, Defendant violated the ADEA.

40. Plaintiff was recommended by his direct supervisor to be promoted to a Field Engineering position because he produced excellent work and had a lot of experience.

41. Despite his superior qualifications, the position was given to a less qualified and younger electrician.

42. Defendant retaliated against Plaintiff after he participated in protected activity and complained to his superiors about the discrimination and harassment that occurred within Great Arrow Builders against him and other employees.

43. Defendant is responsible, under a theory of respondeat superior, for the actions of its management and other supervisors.

44. Defendant's violations were intentional and willful.

45. Liquidated damages are warranted given Defendant's willful violation of the ADEA.

46. As a direct and proximate result of Defendant's unlawful employment practices, Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until the Court grants the relief requested.

### COUNT II
**Disability Discrimination in Violation of the ADA, 42 U.S.C. § 12101, et seq.**
*Discrimination and Retaliation*

47. Plaintiff hereby incorporates all allegations contained in the above-mentioned paragraphs as fully as if they were set forth at length.

48. Plaintiff suffered from qualifying health conditions under the ADA that affected his ability at certain times to perform daily life activities.

49. Defendant was at all times an employer with more than 15 employees and subject to the ADA.

50. Plaintiff's pre-existing foot injury is a disability that is recognized under the ADA.

51. Plaintiff was otherwise qualified to perform the essential functions of his job with or without reasonable accommodation.

52. Plaintiff informed Defendant's managers/supervisors of his serious medical conditions. He also informed them of the need for medical treatment and/or other accommodations.

53. Despite Plaintiff's health conditions and limitations, he was still able to perform the duties of his job with or without a reasonable accommodation.

54. Plaintiff requested a reasonable accommodation to not wear safety boots that exacerbated his condition. He went to see an approved doctor, Dr. Mansour, in support of this accommodation. However, Dr. Mansour refused to even examine Plaintiff's foot. Defendant terminated Plaintiff's employment because of, and in retaliation for, requesting a reasonable accommodation under the ADA.

55. Defendant's actions in subjecting Plaintiff to discrimination based on his actual and/or perceived disabilities and/or record of impairment, and retaliating against him for requesting a reasonable accommodation for Plaintiff's disabilities violated the ADA.

56. As a direct result of unlawful, discriminatory, and retaliatory employment practices in violation of the ADA of which Defendant engaged, Plaintiff sustained permanent and irreparable harm, resulting in termination from employment, which caused loss of earnings, plus the value of certain benefits, loss of future earning power, back pay, front pay and interests.

**COUNT III**
**Violations of Title VII**
*Race (Assoication Discrimination), National Origin Discrimination, Hostile Work Environment and Retaliation*

57. Plaintiff hereby incorporates all allegations contained in the above-mentioned paragraphs as fully as if they were set forth at length.

58. By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant violated Title VII.

59. Defendant acted intentionally and willingly, with malice and/or reckless indifference to Plaintiff's rights, warranting the imposition of punitive damages.

60. As a direct and proximate result of Defendant's violations of Title VII, Plaintiff has suffered damages and losses and has incurred attorneys' fees and costs.

61. Plaintiff is an Polish immigrant with a noticeable accent who was disparately treated in comparison to his white-American counterparts.

62. Defendant, by and through its supervisors, intentionally discriminated against Plaintiff on the basis of the race of coworkers with whom he associated.

63. Plaintiff associated with members of a protected class at his place of employment.

64. Plaintiff suffered from an adverse employment action.

65. Defendant's actions altered Plaintiff's work environment. The frequent derogatory comments made by management about Plaintiff and other minority groups in the workplace created a toxic work environment.

66. The discrimination that Plaintiff faced detrimentally affected Plaintiff, and this discrimination would detrimentally affect a reasonable person in similar circumstances.

67. This severe and pervasive environment continued throughout Plaintiff's employment.

68. Defendant is liable for their supervisors under the doctrine of respondeat superior.

69. Plaintiff participated in protected conduct by formally complaining about the discriminatory language and actions of management. Defendant retaliated against Plaintiff because of his participation in protected activities by writing him up and terminating him. There is a causal connection between Plaintiff's participation in protected activities and the adverse employment action from which Plaintiff suffered.

70. As a direct and proximate result of Defendant's acts and conducts, Plaintiff has suffered and will suffer those injuries, damages, and losses alleged herein and has incurred and will incur attorneys' fees.

71. The wrongful acts and conduct of Defendant were done with deliberate indifference to the statutory and constitutional rights of Plaintiff.

72. Plaintiff suffered adverse employment consequences, specifically, Defendant retaliated against Plaintiff by terminating him.

73. Plaintiff was terminated as a result of Defendant's discriminatory conduct.

74. Plaintiff is now suffering and continues to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until the Court grants the relief requested.

75. Plaintiff was retaliated against for making complaints regarding related to the discrimination that he suffered.

76. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until the Court grants the relief requested.

## COUNT IV
## § 1981
### *Race Discrimination (Association), Hostile Work Environment, and Retaliation*

77. Plaintiff hereby incorporates all allegations contained in the above-mentioned paragraphs as fully as if they were set forth at length.

78. Defendant's discriminatory and retaliatory actions, as set forth herein, deprived Plaintiff of the rights guaranteed under 42 U.S.C. § 1981; as such, its remedies are implicated.

79. Plaintiff had the right to make and enforce contracts, to sue, and to receive the full and equal benefit of all laws.

80. Plaintiff was an at will employee, which implicates his right to make and enforce contracts.

81. Defendant abridged Plaintiff's right to make and enforce contracts by its discriminatory conduct toward Plaintiff.

82. As a result of Defendant's actions, Defendant has denied Plaintiff the right to the same terms, conditions, privileges and benefits of their employment with Defendant.

83. Defendant, by and through its supervisors, intentionally discriminated against Plaintiff on the basis of the race of coworkers with whom he associated.

84. Plaintiff associated with members of a protected class at his place of employment.

85. Defendant's actions altered Plaintiff's work environment.

86. The discrimination that Plaintiff faced detrimentally affected Plaintiff. And this discrimination would detrimentally affect a reasoanble pereson in like circumstances.

87. This severe and pervasive environment continued throughout Plaintiff's employment.

88. Defendant is liable for their supervisors under respondeat superior.

89. Plaintiff participated in protected conduct.  Defendant retaliated against Plaintiff because of his participation in protected activities.  There is a causal connection between Plaintiff's participation in protected activities and the adverse employment action from which Plaintiff suffered.

90. As a direct and proximate result of Defendant's acts and conduct, Plaintiff has suffered and will suffer those injuries, damages, and losses alleged herein and has incurred and will incur attorneys' fees.

91. The wrongful acts and conduct of Defendant was done with deliberate indifference to the statutory and constitutional rights of Plaintiff.

92. Plaintiff suffered adverse employment consequences, specifically, Defendant retaliated against Plaintiff.

93. Plaintiff was terminated as a result of Defendant's discriminatory conduct.

94. Plaintiff was terminated because of his close associations with minorities and his willingness to complain about race discrimination at the worksite.

95. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until the Court grants the relief requested.

**PRAYER FOR RELIEF**
**RELIEF**

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendant's improper conduct, and specifically prays that the Court grant the following relief to Plaintiff by:

a) Declaring the acts and practices complained of herein to be in violation of the ADEA, the ADA, and the PHRA;

b) Enjoining and permanently restraining the violations alleged herein;

c) Entering judgment against the Defendant and in favor of the Plaintiff in an amount to be determined;

d) Awarding compensatory damages to make Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

e) Awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasure, which Plaintiff has suffered or may suffer as a result of Defendant's improper conduct;

f) Awarding punitive damages to Plaintiff;

g) Awarding Plaintiff such other damages as are appropriate under the ADEA, the ADA, the PHRA, and any other relevant provisions;

h) Awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorney's fees; and,

i) Granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

Respectfully submitted,

Dated: May 26, 2022

/Andrew Lacy, Jr. Esq.
**THE LACY EMPLOYMENT LAW FIRM LLC**
2514 W Seybert Street
Philadelphia, PA
(t) 412-301-3908
andrew.lacy@employment-labor-law.com

*Counsel for Plaintiff*